**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| JUAN FERNANDEZ, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO. _____ |
| SOCIETE INTERNATIONALE DE TELECOMMUNICATIONS AERONAUTIQUES, LTD. d/b/a SITA, and KERRY BRACKEN, *individually* | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Juan Fernandez, by and through the undersigned
Counsel, and files this Complaint for Damages ("Complaint") against Defendants
SOCIETE       INTERNATIONALE       DE       TELECOMMUNICATIONS
AERONAUTIQUES, LTD. d/b/a SITA, and Kerry Bracken, (*collectively*,
"Defendants") and in support thereof, alleges as follows.

## JURISDICTION AND VENUE

### 1.

Plaintiff Juan Fernandez ("Fernandez" or "Plaintiff") brings the above-
captioned case pursuant to:  (1) 42 U.S.C. § 2000e, *et seq.*, Title VII of the Civil

Rights Act of 1964, as amended, ("Civil Rights Act") for race and national origin discrimination; (2) 42 U.S.C. § 1981 ("Section 1981") for race and national origin discrimination; (3) 29 U.S.C. § 621, *et seq.*, Age Discrimination in Employment Act of 1967, as amended, ("ADEA") for age discrimination; and (4) the laws of the State of Georgia for intentional infliction of emotional distress and negligent hiring, supervision, and retention.

2.

The United States District Court for the Northern District of Georgia ("Court") is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 because the Complaint involves the laws of the United States.

3.

Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant is located, and the unlawful conduct forming the basis of the Complaint occurred, in the Northern District of Georgia, Atlanta Division.

**PARTIES**

4.

Fernandez is a fifty-two (52) year old Latino male who was born in Cuba and later naturalized as a United States citizen. He is a resident of the State of Florida

entitled to bring the claims asserted in this Complaint and subjects himself to this Court's jurisdiction.

5.

Fernandez was an "employee" within the meaning of the Civil Rights Act, 42 U.S.C. § 2000e(f), and the ADEA, 29 U.S.C. § 630(f).

6.

Societe Internationale De Telecommunications Aeronautiques, Ltd. d/b/a SITA ("SITA") is a foreign corporation providing information technology and communication services to the air-transportation industry, affecting inter-state commerce and subject to the jurisdiction of the Court, with corporate offices located worldwide.

7.

SITA operates a regional office located at 3100 Cumberland Boulevard, Suite 900, Atlanta, Georgia 30339 ("Atlanta Office").

8.

SITA is an "employer" within the meaning of the Civil Rights Act, 42 U.S.C. § 2000e(f), and the ADEA, 29 U.S.C. § 630(b). SITA employs over 4,000 employees for each working day in each of twenty (20) or more calendar weeks while engaging

in inter-state commerce with an annual gross sales and/or business volume of at least $500,000.00.

9.

SITA may be served with process through Corporation Service Company, located at 40 Technology Parkway South #300, Norcross, Georgia 30092.

10.

Ms. Kerry Bracken ("Bracken") is a Caucasian female, citizen of the United States, and resident of the State of New Jersey, who was involved in the day-to-day operations of SITA, including the Atlanta Office, and regularly exercised authority to: (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of her assigned department on behalf of SITA.

11.

Bracken was, and continues to be, an employee of SITA. She was, at all times relevant to this action, Fernandez's direct supervisor who participated directly in the unlawful discriminatory conduct described herein.

12.

Bracken may be served with process through Corporation Service Company, located at 40 Technology Parkway South #300, Norcross, Georgia 30092.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.

Fernandez has satisfied all conditions precedent to commencing the above-captioned case, including properly exhausting all administrative remedies pursuant the Civil Rights Act, 42 U.S.C. § 2000e-5, and the ADEA, 29 U.S.C. § 626(d)(2).

14.

On or around May 14, 2017, Fernandez filed a timely Charge of Discrimination against SITA ("Charge") with the Equal Employment Opportunity Commission ("EEOC"), alleging race, national origin, and age discrimination against SITA.

15.

Thereafter Fernandez received a Notice of Right to Sue from the EEOC and has commenced this action within ninety (90) days of the receipt of the said notice.

## FACTUAL ALLEGATIONS

16.

Fernandez, a 52-year old Cuban-born Latino male, began his employment with SITA as an Infrastructure Engineer on or about July 17, 2017 at SITA's Atlanta, Georgia Office.

17.

Upon hire, Fernandez worked at the Government Solutions Line ("GSL") Department at SITA's Atlanta, Georgia Office, which consisted of Project Manager, Keith Ray ("Ray") (Caucasian), and Infrastructure Engineer, David Mauriello ("Mauriello") (Caucasian).

18.

While closely working with Ray at the Atlanta, Georgia Office, Fernandez reported to Sean Callaghan ("Callaghan") who was located at SITA's United Kingdom Office.

19.

During this time—from approximately July 2017 to November 2017—Fernandez performed his duties diligently and received positive, favorable reviews and feedback concerning work performance from Ray, Callaghan, other SITA employees, and clients including, but not limited to, customers from Newark Liberty International Airport and Kona International Airport.

20.

Sometime in November 2017, both Fernandez and Mauriello were assigned to a new manager, Defendant Bracken (Caucasian) who was based in the State of New Jersey.

21.

Consequently, Fernandez was no longer reporting to Callaghan and his title was changed from Infrastructure Engineer to Implementation Engineer.[1]

22.

Nonetheless, Fernandez and Mauriello continued to work the same tasks and duties worked as an Infrastructure Engineer, and closely with Ray until April 2018.

23.

Given that Fernandez was assigned to Bracken approximately (1) month—or less than (1) month—prior to his performance review and that Fernandez continued to perform the same tasks and duties with Ray, both Callaghan and Ray submitted their evaluation of Fernandez praising his work prior to Bracken's issuance of Fernandez's first performance review in December 2017[2]: Callaghan submitted a two (2) page letter to Bracken and Ray verbally praised Fernandez.

24.

Nonetheless, Bracken issued Fernandez an unjustified and unsupported poor evaluation although Fernandez, at the time, had yet to complete any work assignments for Bracken.

---

[1] At this time, Mauriello's title also changed from Infrastructure Engineer to Implementation Engineer.
[2] SITA conducts employee reviews once a year, typically in the month of December.

25.

Meanwhile, Fernandez' younger Caucasian coworker, Mauriello, received an average rated performance review.

26.

When Fernandez inquired about his review, Bracken was unable to provide a reasonable answer other than that Fernandez was "new and had to learn."

27.

Also, notwithstanding the poor evaluation, Bracken failed to place Fernandez on a Performance Improvement Plan ("PIP"), which should have been the next step in the evaluation process in order to provide Fernandez with an opportunity to improve.

28.

Despite this negative review, Fernandez continued to diligently perform his assigned tasks and duties closely with the Atlanta Office Project Manager, Ray, which were identical to his tasks and duties prior to November 2017 when he reported to Callaghan.

29.

Without warning, on or about April 12, 2018, Bracken flew to Atlanta, Georgia, where she terminated Fernandez's employment based upon the failure to

have any certification or prior experience.

30.

Prior to this date, Fernandez had yet to complete any work assignments for Bracken and had interacted with Bracken on only approximately 5 different occasions from November 2017 to April 2018.

31.

Approximately 4 of those interactions were made via phone. Two in-person interactions were made when Bracken flew to the Atlanta Office to: (1) issue a poor performance review to Fernandez in December 2017 and (2) terminate Fernandez's employment in April 2018.

32.

Most importantly, prior to this date, Bracken never mentioned anything to Fernandez about a necessary certification or that his experience was somehow lacking, nor was Fernandez ever advised by SITA that he was required to have any certification or prior experience.

33.

Rather, during the interview, hiring, and onboarding process at SITA, Fernandez was advised that his position did not require any certification or prior experience and that he would be provided with the necessary training.

34.

When Fernandez informed Bracken about this, Bracken simply responded to Fernandez by stating, "the Company does not have time for [Fernandez] to acquire those certifications."

35.

To make matters worse, immediately after Bracken informed Fernandez about his termination, Bracken presented Fernandez with a Release Agreement, waiving his rights to file suit against SITA for its wrongful acts.

36.

Fernandez was neither informed that he had 21 days to consider the agreement, and was not given an opportunity to consult with an attorney before waiving his rights.

37.

Instead, Fernandez was pressured into signing the Release Agreement during the termination meeting: Bracken and SITA HR told Fernandez at least 3 times during this meeting that if he did not sign immediately, that he would "get nothing," including his paycheck for the previous 2 weeks he had worked at SITA; Bracken also brought a notary public into the meeting room without Fernandez's consent,

thereby further pressuring Fernandez to sign immediately. However, Fernandez timely rescinded his Agreement.

38.

Meanwhile, on the same day Fernandez's employment was terminated, Fernandez's younger Caucasian coworker, Mauriello—who also lacked any certification—was not terminated but rather informed on this day that he would start his training so that he could begin working on assignments for Bracken.

39.

During Fernandez's employment with SITA, Fernandez notified SITA about Bracken's unfair treatment, including, but not limited to, Bracken's issuance of a baseless poor performance review, as well as Bracken's several degrading and offensive remarks about Plaintiff's national origin.

40.

Despite this, SITA did nothing to address Fernandez' complaints and ultimately enabled Bracken to use her authority to terminate Fernandez for nonlegitimate, discriminatory reasons.

41.

Throughout Fernandez's employment with SITA, Fernandez performed diligently and was praised for his excellent work.

42.

Nonetheless, SITA and Bracken treated Fernandez unequivocally and significantly less favorably than his younger, non-Cuban-born, non-Latino coworkers who are in similar and comparable positions at SITA.

43.

Such disparaging treatment includes, but is not limited to: issuing a baseless and unwarranted poor performance review to Fernandez; terminating Fernandez's employment based on an unwarranted reason; failing to place Fernandez on a PIP shortly after the issuance of the poor performance review thereby denying him the opportunity to improve; failing to provide training and/or career advancement opportunities that was afforded to his younger, non-Cuban-born, non-Latino counterparts; subjecting Fernandez to several degrading and offensive remarks about his national origin; implementing an arbitrary certification requirement to Fernandez while not imposing the same requirement on his younger, non-Cuban-born, non-Latino counterparts; and denying Fernandez 21 days to consider the Release Agreement when terminating his employment.

44.

Upon information and belief, Fernandez was the only Cuban-born, Latino employee during his employment at SITA.

## CLAIMS FOR RELIEF

### COUNT I
### RACE AND NATIONAL ORIGIN DISCRIMINATION
### IN VIOLATION OF TITLE VII AND SECTION 1981
**(Title VII Asserted Against SITA & Section 1981 Against All Defendants)**

45.

Fernandez re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

46.

At all times relevant to this action, the relationship between Fernandez and SITA was a relationship of "employee" to "employer," such that a cause of action exists where discrimination based on race and national origin is alleged to be the cause of an adverse action directed to the employee by the employer.

47.

At all times relevant to this action, SITA acted by and through its agents and employees, each of whom acted in the course and scope of their employment with and for SITA.

48.

At all times relevant to this action, Bracken was an employee of SITA. As Fernandez's direct supervisor from approximately November 2017 until his

termination of employment in April 2018, Bracken had the authority to undertake and recommend tangible employment actions against Fernandez.

## 49.

Fernandez, a Latino-Cuban male, was born in Cuba and is of Cuban descent. Thus, he is a member of a protected class under Title VII and Section 1981.

## 50.

At all times relevant to this action, Fernandez was qualified for his position and was praised for his excellent work.

## 51.

Nonetheless, Defendants intentionally discriminated against Fernandez on the basis of his race (Latino-Cuban) and national origin (Cuba) by—among other things—(1) issuing a baseless and unwarranted poor performance review; (2) failing to place Fernandez on a PIP shortly after the issuance of the poor performance review thereby denying him the opportunity to improve; (3) failing to provide training and/or career advancement opportunities that were afforded to his non-Cuban-born, non-Latino counterparts; (4) subjecting Fernandez to several degrading and offensive remarks about his national origin; (5) implementing an arbitrary certification requirement to Fernandez while not requiring the same on his non-

Cuban-born, non-Latino counterparts; (6) denying Fernandez 21 days to review the Release Agreement during his termination meeting; (7) failing to adequately address Fernandez's complaints against Bracken; and (7) terminating Fernandez's employment based on a groundless and unwarranted reason.

## 52.

Consequently, Fernandez was treated less-favorably than similarly-situated non-Cuban-born, non-Latino SITA employees in violation of Title VII and Section 1981.

## 53.

Defendants' conduct adversely impacted Fernandez's terms, conditions, and privileges of employment.

## 54.

As a direct and proximate result of Defendants' intentional and unlawful conduct, which was intended to cause Fernandez harm and/or was committed with reckless disregard of the harm caused to Fernandez, in derogation of his federally-protected rights, Fernandez has suffered and continues to suffer emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, danger to his reputation, and other pecuniary loses.

54.

Defendants' intentional and illegal conduct entitles Fernandez to compensatory damages, as well as any and all other remedies available under Title VII and Section 1981.

55.

Defendants' actions with regard to Fernandez demonstrate willful misconduct, malice, fraud, wantonness, oppression, and a complete lack of care, and therefore, Fernandez is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

**COUNT II**
**AGE DISCRIMINATON**
**IN VIOLATION OF THE ADEA**
**(Asserted Against SITA)**

55.

Fernandez re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

56.

At all times relevant to this action, Fernandez, age fifty-two (52), belonged to a protected group and was fully qualified for the position he held at SITA.

57.

SITA violated the ADEA by denying Fernandez an opportunity to advance in the company and ultimately terminating his employment due to his age.

58.

Specifically, Fernandez received a poor performance review—and subsequently was never placed on a PIP prior to termination, despite the fact that (1) he had yet to complete any work assignments for Bracken at the time of his termination, and (2) he was oftentimes praised for his excellent quality of work.

59.

Meanwhile, Fernandez's similarly-situated younger SITA co-workers received better reviews and more opportunities to advance, despite performing at a lower level and/or being less qualified than Fernandez.

60.

Furthermore, younger SITA employees were allowed to retain their employment at SITA despite lacking any certification, while the said reason was used to justify Fernandez's termination of employment.

61.

Consequently, SITA has shown, and continues to show favoritism to similarly situated younger employees.

62.

SITA's conduct constitutes unlawful age discrimination in violation of the ADEA.

63.

As a direct and proximate result of the unlawful age discrimination by SITA, Fernandez has suffered pecuniary and emotional damages, including, but not limited to, lost wages, loss of future income, loss of retirement, loss of other benefits such as insurance, pain and suffering, humiliation, other intangible losses, and litigation expenses.

64.

Furthermore, SITA's conduct was "willful" as defined by the ADEA and therefore Fernandez is entitled to liquidated damages in an amount equal to compensatory damages.

## COUNT III
## NEGLIGENT HIRING, RETENTION, AND SUPERVISION
## IN VIOLATION OF GEORGIA LAW
### (Asserted Against SITA)

65.

Fernandez suffered discrimination based upon his race, national origin, and age as a result of the actions taken by the Defendants.

66.

Although Fernandez notified SITA of Bracken's unlawful conduct, SITA failed to take any corrective or remedial actions.

67.

SITA owed Fernandez a duty to hire, retain, and supervise employees who would lawfully conduct themselves and not engage in discriminatory or tortious conduct.

68.

By negligently retaining and supervising its employee and agent, Bracken, SITA breached the duty to hire, retain, and supervise an employee who would lawfully behave.

69.

SITA knew or, in the exercise of ordinary diligence, should have known of the propensity of its employee and agent, Bracken, to engage in discriminatory conduct toward employees over forty (40) years of age and non-Caucasian employees, especially given the fact that Bracken made several degrading and offensive remarks about Fernandez's national origin, Bracken has repeatedly engaged in discriminatory behavior, and Fernandez complained about Bracken's discriminatory behavior.

70.

Additionally, by failing to engage in any corrective or remedial action, SITA ratified, condoned, and/or adopted Bracken's unlawful and discriminatory conduct.

71.

As a direct and proximate result of SITA's negligent retention and supervision of Bracken, as well as the failure to take any remedial or corrective action with respect to the known discrimination, Fernandez has suffered damages.

72.

SITA'S negligent conduct entitles Fernandez to compensatory damages, as well as any and all other remedies available under the law.

**COUNT IV**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**IN VIOLATION OF GEORGIA LAW**
**(Against All Defendants)**

73.

During the relevant period, Defendants knowingly discriminated against Fernandez based upon his race (Latino-Cuban), national origin (Cuba), and age (52) in violation of Title VII, Section 1981, and the ADEA.

74.

Defendants' discrimination and conduct towards Fernandez was intentional and/or reckless.

75.

Defendants' discrimination and conduct towards Fernandez was extreme and outrageous.

76.

As a result of Defendants' extreme and outrageous conduct and behavior, Fernandez has suffered severe emotional distress.

77.

Defendants knew or should have known that their discriminatory conduct would result in Fernandez's severe emotional distress.

78.

Fernandez is entitled to recover an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Fernandez prays for the following relief:

(a)    That the Clerk of the Court issue summons and original process, served upon Defendants and any other person or entity the Court deems necessary in accordance with the law;

(b)    That the Court grant declaratory judgment that Fernandez's rights under Title VII, Section 1981, and ADEA were violated;

(c)     That the Court award Fernandez compensatory damages for all injuries suffered as a result of Defendants' unlawful conduct;

(d)     That the Court award appropriate back pay, including, but not limited to, reimbursement for lost income, bonuses, incentive compensation, pension, social security, and other benefits in amounts to be shown at trial;

(e)     That the Court award liquidated damages equal to back pay and lost benefits based upon Defendants' willful violations of the Civil Rights Act, Section 1981, and the ADEA;

(g)     That the Court award punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such future conduct;

(h)     That the Court award pre-judgment interest on any monetary award;

(i)     That the Court grant a trial by jury as to all triable issues of fact; and

(j)     That the Court award such further and additional relief as may be just and appropriate under the circumstances

Respectfully submitted, this 10th day of October, 2018.

*[signature on the following page]*

MOLDEN & ASSOCIATES

/s/ Regina S. Molden
REGINA S. MOLDEN
Georgia Bar No. 515454
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com

*Counsel for Plaintiff Juan Fernandez*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JUAN FERNANDEZ,

   Plaintiff,

 vs.         CIV. ACTION NO. _____

SITA INFORMATION NETWORKING
COMPUTING USA, INC., also known
as Société Internationale de     **JURY TRIAL DEMANDED**
Télécommunications Aéronautiques and
d/b/a SITA, and KERRY BRACKEN

   Defendants.

## LOCAL RULE 7.1(D) CERTIFICATION

The undersigned counsel certifies that this document has been prepared with

one of the font and point selections approved by the Court in Local Rule 5.1(B).

Respectfully submitted, this 10th day of October, 2018.

      MOLDEN & ASSOCIATES

      /s/ Regina S. Molden
      REGINA S. MOLDEN
      Georgia Bar No. 515454
      Peachtree Center – Harris Tower, Suite 1245
      233 Peachtree Street, NE
      Atlanta, Georgia 30303
      (404) 324-4500
      (404) 324-4501 (facsimile)